The next matter, number 23-1480, Southbridge Real Estate, LLC v. Kiavi Funding, Incorporated, et al. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning, Your Honor. It's Attorney Todd Dion on behalf of the Appellant Plaintiff, Southbridge Real Estate, LLC. You can start. I'm here to discuss the two foreclosure statutes under Massachusetts General Laws 244, Section 14, and Chapter 183, Section 21, which both require that the mortgagee, by way of a compliant assignment of the mortgage, be the party who is foreclosing. Principles of strict compliance regarding these statutes and assignments of mortgages have been articulated by the SJC in the Ibanez decision and by this Court in the Cohen decision as only allowing a borrower a standing fee of $1,000. In this case, the foreclosure statutes are intended to challenge a void assignment. The assignments in this case to TURAC Capital Partners, as recorded, appear to the world to be completely valid under Massachusetts General Laws 183, Section 54B, and if anything, voidable rather than void. Wasn't that true of the assignments in Ibanez? They were conveyed in blank and then the recipient wrote in the blank, and then the recipient wrote in the blank, and then the recipient wrote in the blank, and then the recipient wrote in the blank. And yet, as I read Ibanez, the SJC said they were no good. They were void. Your Honor, I think that this case can be distinguished from Ibanez. First of all, it's a unique situation where it's not the borrower that's trying to avoid an assignment, but it's the bank that's trying to avoid its own assignment. And I think that these assignments really have the characteristics of avoidable assignment rather than a void assignment. So what case in Massachusetts would distinguish Ibanez in holding it a blank, that if I hand you an assignment but leave blank the S&A, that that's not void? Avoidable assignment is if at the election of one of the parties. No, I said what authority in Massachusetts. We have to interpret Massachusetts. There is no real authority specifically on this issue. I'm just attempting to do this. How do you distinguish Ibanez? I distinguish Ibanez by the fact that the assignments, avoidable assignment is at the election of one of the parties. And it was in the defendant's control whether or not the assignments were deemed void or not. So here we have a situation. We have an assignment that appears valid. It contains all of the elements of a valid assignment. My client would certainly not be able to challenge this assignment as void at the time of the foreclosure. It looks like a valid assignment. So when the bank is in control over whether or not the assignment is valid or not, is void or not, by letting the world know that the assignment is void, I would argue that it has the characteristics of a voidable assignment. Especially five months after the foreclosure. And especially since the notice of sale never mentioned this assignment at all. I think that's a strict compliant factor as well. I think the foreclosure is invalid on that basis as well. So I think that the strict compliance should not allow a foreclosing entity to make void. In Ibanez itself, it was recorded blank? No, it wasn't recorded. It was later stamped in. The assignee was stamped in. At the time of recording, it was blank? How did it work? No, at the time of recording, before it was recorded, it was stamped in. And then through discovery, the borrower found that the... That's Ibanez? Yes. How is that different than here? Well, here, my client has no... As far as the recording statutes go, it's a notice to the rest of the world who holds the mortgage. So in Ibanez, if the rest of the world went into the registry, they would see option one held the mortgage because its name had been stamped in before registration. And yet the SJC said, no good. Well, the SJC, I guess, skipped over that. But they had said in the footnote that it would not be valid, that it would be void. I think that the foreclosure and the fact that it was never... That's what I'm trying to figure out. What they said in Ibanez that rendered it void was the handing over the blank assignment? What was the thing that they were saying? Because you're right, in Ibanez, they skip over the issue that you say is the distinguishing fact. So as you understand Ibanez, what made it void there? The fact that it was the... Well, the validity of the assignment. And what made the assignment problematic such that it was void? The fact that the assignee was inputted after, that it was originally given in blank. That's why it was... So just playing that out, was this originally given in blank? Well, I don't know. I think there are distinguishing facts. I think that's a material fact issue because I have discovery showing that when it came to... When the servicer was trying to figure out when to foreclose or to give my client a short sale, they contacted two REC Capital partners, not the foreclosing entity, Christiana Trust. Have you raised on appeal the argument that this was not a blank conveyance? No. So it was blank as far as we're concerned. Well, I... Actually, I think I did because I'm arguing factually, why is the servicer contacting two REC if two REC is not the mortgagee? I've always argued that. And that calls into validity the veracity of the affidavits. Well, the affidavits that were recorded by... I guess all things are blank at some point. Right? There's a moment in time in which any document that's going to assign it is blank before it's filled in. Right? Yes. So is the point you're trying to make that as the case comes to us, as you understand the record, at the relevant time for purposes of the Bonyas, this was not blank? It was two REC had been assigned? I believe that's a question of fact because at the time of the foreclosure, the servicer was contacting two REC clearly. Are we on summary judgment here and you're opposing a summary judgment grant? Yes. So for your purposes, you would like us to treat it favorable to you for purposes of overturning summary judgment against you? Correct. For all intents and purposes, at the time of the assignment, two REC was on it. It was not blank. Therefore, it's not like the Bonyas. Is that the idea? Yes. Well, that's the argument. That's what the evidence shows from the servicing notes where the servicer is contacting two REC to find out when to foreclose, whether to give my client a short sentence. So I guess couldn't that exact same argument have been made in a Bonyas? I mean, there was a moment in time prior to recording it was blank. Then a name gets on it. This case is there's a moment in time where it's blank and then a name gets on it. Well, I think a Bonyas is different because there wasn't evidence that the servicer was contacting option one. I see. So there was no suggestion there that it's possible it was a valid assignment. Yes. So as far as the assignment being voidable, I'm arguing that the And you're saying what makes it voidable rather than void then is I just don't know. Is it You'll have to show me where in your brief you raised this issue. But if you're right that factually the Assignor put in the Assignee's name before conveying the assignment, then that would mean a Bonyas is completely inapplicable. So we don't even need to talk about void or voidable. It would be valid. It wouldn't be voidable. I'm presenting several arguments. Well, we'll just be careful. Did you, Judge Carr, I think put it the way that's important and I'm not sure you mean to be saying the record does show this. There's a question whether the Assignor put it in prior to the receipt by the Assignee. Yes, the Assignee. I thought your argument was that the Assignee put the name in with the consent of the Assignor at most. Is that wrong? Or are you saying that the record actually could be thought to show that the Assignor put the name in? Yes, I'm saying that. Because the Assignor was the servicer lending home. Lending home remained the servicer. And then when it was time to whether to postpone or not, lending home was contacting TURAC, not Christiana Trust, to either postpone the foreclosure or negotiate a short sentence. I thought there was some evidence about how the name got on that there wasn't a dispute that it was TURAC that wrote the name on. Well, I wouldn't agree with that. I always brought this up that the evidence, the servicing notes are showing lending home contacting TURAC, so that calls into question the validity of the entire affidavit that's saying that it was an assignment in blank. So, yes, I am challenging that. I think there was a dispute that I did bring up in the lower court. There's nothing else. Thank you. Thank you. At this time, would Counsel for the Appellees please introduce himself on the record to begin? Good morning, Your Honors. Brian Linehan from Duna Graves in Longoria on behalf of the Appellees, Christiana Trust, and CAB funding. To address the Court's question regarding the import of the blank assignments, first and foremost, there is evidence that these assignments were delivered to TURAC Capital Partners in blank. There are affidavits from both CAB funding stating that when they provided the assignments to TURAC, they did not identify the S&E and that they were in blank. And there's an affidavit from TURAC also confirming that when they received the assignments they did not identify the S&E. TURAC's affidavit also goes on to state that through inadvertence, the assignments were later discovered in a folder and they were labeled with TURAC Capital Partners as the S&E and then recorded. In opposing summary judgment, this doesn't necessarily mean anything about how the case comes out, but in opposing summary judgment, did the opposing party here make the argument that it was delivered with TURAC's name on it? Not to my knowledge, Your Honor. What was the argument as you understood it? The argument as I understood it is that regardless of the fact that the assignment of mortgage was provided in blank after it was filled in and recorded, that is what gave it effect. And the argument, at least from my reading of the appellant's brief, is that the world would have been on notice of this alleged transfer of the legal title of the mortgage. But that's not really of any importance to the Court's decision because recording a document that's void does not provide constructive notice. That's stated in the Allen decision that's stated in the Allen decision. Ibanez skipped over a question. How do you understand what it is they skipped over? So, it's interesting, Your Honor, because Ibanez skips over the question of whether a blank assignment can be given effect at a later date. In footnote 19, they discuss that there was an assignment of mortgage from Rose Mortgage to Option 1 that was initially in blank and later stamped with Option 1 as the S&E and they say that they were not... You say later stamped. That's post-recording or the decision goes into detail as to when the stamp was affixed, but I would assume it had to be pre-recording because you wouldn't be able to alter the document after it was recorded. So, the Court does state that it was not required to determine the validity of that assignment because of its underlying holding that the bank did not obtain a valid assignment from Option 1. Now, earlier in the decision, the Court does state, and I believe that this is a separate assignment, that there was another blank assignment in the record. And that's where we get the statement, the unequivocal statement from the SJC that a blank assignment is void, it conveys nothing. And when you take that statement from the SJC, in the context of this Court's discussion of void versus voidable instruments in Wilson, where the Court states that a void assignment is... I'm sorry, a void instrument has no effect, it's a nullity, and the important language is that it is incapable of confirmation or ratification. And that's important here because that's essentially what the appellant is arguing, is that 2 RAG is ratified. Am I right that there's some SJC precedent about filling out the blank assignment in the presence of the SONOR can make it valid? I don't believe that that is the case. I don't believe there's any authority on that note. And the reason that I suspect is because of the issue of delivery. Now, the importance of this is that in Massachusetts an assignment of mortgage is treated like a conveyancing instrument, essentially a deed of legal title. And to be effective, a deed has to be delivered to the grantee. And in order to be effective for delivery purposes, there has to be a present intent to treat the instrument as delivered. So if the assignment of mortgage is signed on, for instance, with respect to the Pleasant Street property, the blank assignment was executed on October 16, 2018, even if 2 RAG and later on said, okay, yes, we want this assignment to go on record, I would argue that they would have to re-execute that assignment. Because otherwise, what they are essentially trying to do is give effect at a present time, today, for instance, to an assignment that was executed over 3 years ago, 4 years ago. But that does not reflect a present intent to deliver the title to the property. And so I would argue that if there's a blank assignment in the record, that assignment, in order to be effective, would have to be re-executed in the presence of a notary by the person that has proper authority, properly naming the grantee in the assignment of mortgage. Otherwise, we're left with the statement of Wilson that says that a void instrument is incapable of confirmation and ratification. And the appellant makes an issue of references to 2 RAG as an investor in its collection notes. So Chiavi's collection notes, first and foremost, are their hearsay. They're out-of-court versions therein. And the appellant, although referenced the business record standard in his summary judgment briefing, did not actually lay the proper foundation. He did not have an affidavit from a business records witness of Chiavi to lay the proper foundation for those records. But even looking at the merits of those records, there's nothing in there that refers to 2 RAG as the owner of the loan, the holder of the note, the assignee of the mortgage, the mortgagee generally. They refer to 2 RAG as an investor. And that's because 2 RAG, the reason that these blank assignments came into being is that 2 RAG lent Chiavi money under a private financing agreement. And as collateral, Chiavi pledged this pool of mortgage loans. And so to avoid the need of 2 RAG having to go back to Chiavi to obtain an assignment of mortgage in the event that they defaulted under the private financing agreement, they determined that they could have these assignments executed in blank. Without the benefit, I'm assuming, of the case law that says that that's not an appropriate way to assign a mortgage. By investing money, by lending Chiavi money and taking collateral in exchange for that loan as security for that loan, logically, 2 RAG would have some say with respect to decisions that affect that pool of loans, such as whether to grant a short sale for less than what is owed on that mortgage, to grant loss mitigation, to modify the terms of the loan, to delay the foreclosure in other respects. All of these would have a material financial impact on 2 RAG's interest in those loans. So they would logically have some sort of say. But Chiavi's reference to 2 RAG as an investor, that's not synonymous with the term note holder or note owner in our case law in Massachusetts regarding foreclosures under the power of sale. Excuse me, Your Honor. And so one final thing with respect to recording. The argument that third parties may look at this assignment and think that a that's not material because a void assignment cannot provide that constructive notice. That's the reason that the Chiavi and 2 RAG and Christiana Trust executed these affidavits under Chapter 183, Section 5B to put the world on notice of the facts and circumstances that demonstrate that these assignments of mortgage are in fact void. So now anybody looking at the title in the future will understand, okay, this assignment is on record, but it was executed in blank and it is void under the law. And so what we're left with is the assignment of mortgage to Christiana Trust, who was in fact the foreclosing mortgagee. Did 2 RAG date its signature? Yes. The 2 RAG did not sign the blank assignment of mortgage. They were signed by Lending Home, which was Chiavi is now known as, sorry, Lending Home is now known as Chiavi. So when Chiavi signed the assignment of mortgage in blank, yes, they were dated. The assignment of mortgage on Pleasant Street is dated October 16, 2018. I'm not talking about the assignment. I'm talking about the assignment was made on a certain date, but it was blank. Correct. The document then went to someone else. Correct, Your Honor. At some point, someone else then filled in their name. I understand. Did they date that? No, Your Honor, and there's no date on that. There's no initials next to it by anybody. So it looked to all the world as if it had been... It looked to all the world as if that assignment of mortgage to 2 RAG was to be effective as of October 16, 2018 in the context of the Pleasant Street property. So, yes, while that assignment was on record, it looks to be a transfer of the property as of October of 2018, but as we know from the affidavits in the record, Chiavi never defaulted under its private financing agreement with 2 RAG. So there was no intent ever to deliver these assignments of mortgage. These assignments were only to be delivered in the event of a default under the private financing agreement. And so that's why we have these statements from 2 RAG, from Chiavi, from Christiana Trust, all acknowledging that this is just an error. Can you help me with something? In the magistrate's decision, it's a really thorough decision, and it says this point about a bond is and how it holds its void when it's a blank assignment. Then it says, to the extent plaintiff contends that the later addition of 2 RAG's name to the blank assignment renders the assignment valid, Massachusetts law, while perhaps sparse, does not support that contention, particularly when there's undisputed evidence that the assignee and assignor agree these assignments were not intended to be effective. Then it says, while not binding on this court, there's some appellate decision that addresses that. I guess what I'm just confused is what's going on if a bond holds its void when assigned in blank? Why is there some Massachusetts Appellate Court precedent dealing with the situation of what happens when the name's filled in? How would we ever get to that question? I'm not sure I am familiar with the decisions that the judge was talking about about the... It's called Clearview Opportunity 15 LLC versus Sheehan. The Sheehan case, yes. I'm not familiar with the underlying facts of that case. It was, as far as I recall, an appellate division decision. It didn't make it up to the appeals court or the Supreme Judicial Court, to my knowledge. Honestly, I'm not sure of the court's basis for its underlying holding in that decision. But as I mentioned, what we have from the SJC and from the First Circuit is the statement that blank assignments are void, which is that a void instrument cannot be given effect at a later date. The logic behind that statement from the SJC as to a blank assignment being void comes from the issue of delivery, because you have to affect a present intent to transfer that mortgage. If the assignee is filled in at a later date, there's no present intent, at least at the time of the execution of the assignment. With respect to the underlying foreclosure sales, because Christiana Trust was the owner of Boston Street and Prospect Street at the time of the foreclosure sale, because the assignments to TURAC were void, and it's undisputed that Christiana Trust was the holder and owner of the promissory note at the time of those foreclosure sales, they did in fact have standing to foreclose and conduct their foreclosure. The standing challenge is the only challenge that's really raised on appeal with respect to the validity of the underlying foreclosures. So what the court is left with is that these assignments of mortgage in blank to TURAC are void. It was not within TURAC's capability to unilaterally give those assignments effect at a later date, because they're incapable of confirmation and ratification, and that leaves the assignments of mortgage to Christiana Trust, as the operative documents on the record show in Christiana Trust standing to foreclose. Now, with regard to... The consequence of what you're saying is that when I go to the book and I look at what's recorded, I can't rely on it. Not that you can't rely on it, Your Honor. It's that inevitably there will be instruments that are recorded in the land records that do not reflect the intent of the parties. And that's why Massachusetts created this statute, Chapter 183, Section 5B, which says if there's an instrument of record that does not accurately reflect the intent of the parties, the parties can record an affidavit that sets forth the facts that have to be consistent with the document that they're referring to, but which explain what actually happened to the world. That's the purpose of this record. And when did that and that happen? Are you relying on some affidavits independent of that, or not? Only the summary judgment affidavits. There were separate affidavits that were executed for the purpose of the motion for summary judgment, and those were filed with the court. But the Section 5B affidavits, these are affidavits that are recorded on title to the property. And they're in the court record. They're in the appellate record. But these are not actually the affidavits that were... Can you just help me understand, given what you just said, when there's the 5B affidavit, why, for purposes of what we're trying to figure out, would we ever look at anything other than those? The 5B affidavits? Well, because just the summary judgment record, Your Honor, it's just the business records affidavits that we put in that sets, you know, that these are admissible because they are business records of Kiabi and Turack. They set forth the facts, at least from the summary judgment perspective. But if you're speaking from a third party disinterested, that's exactly what they would look at. They would look at the 5B affidavits. And the 5B affidavits here show what? They show that the assignments of mortgage were initially delivered in blank, and that Turack filled them in without seeking or obtaining Kiabi's office. And all that occurred prior to the affidavits were recorded after the foreclosure sale. So why isn't that for the relevant purpose of the policy point? Because... Which is that we want the people who are going to be looking at the book to have confidence in it. And what you're saying here is if I did look at the book at the relevant time, everything would indicate to me that Christiana was not involved in Turack was. Understood, Your Honor. However, as I mentioned, the import of that, the argument, would be that somehow the blank assignment, because it's on record and because third parties would be looking at this and taking notice of the facts that are in that assignment, that they would somehow have an effect on who is actually entitled to enforce the loan, simply because third parties may take knowledge of that. But a void instrument is a void instrument. But I guess what I'm saying, is it void until the 5B affidavit is present? It's void ab initio, Your Honor, from the outset. Yeah, but is it void at the moment? I know at the moment a 5B affidavit showing its voidness is recorded renders it void ab initio. But can it be void ab initio prior to the recording of the 5DF? If that's the case, then it seems to me the whole policy purpose of making it known to the world what's going on is defeated. Because that means that I can't look at the book because I look at the 5B affidavits and I see that there isn't one, but I have to imagine there might be one. That doesn't make sense to me. No, because the public is entitled to presume that the land records are accurate. Now, I understand your concern that somebody might be interested in purchasing a property of foreclosure and they might look at the title and have some concerns. But the underlying fact is that a void instrument is a void instrument, as I said. The 5B affidavits have no independent effect on the effectiveness of those assignments of mortgage. It's just a notice statute. It's just for the purpose of putting the world on notice. And, Your Honor, to address any underlying concern of that, the Prospect Street property, there was competitive bidding. So this was not something that really affected the bidding at the foreclosure sales. And there was no argument raised below that this was not a commercially reasonable sale. There are other types of documents filed in the registry that are void. What other types of documents, Your Honor? I'm sorry. There are. This isn't the only example of a document that can be filed in the registry and look to be and do something that it doesn't do. Correct, Your Honor. Yes. I mean, thinking just off the top of my head, I would think of trust agreements. There are very important considerations that have to go into the trust agreements, and they don't all comply with the law and they don't all have the required elements. And nevertheless, the registry accepts them for recording because the registry doesn't determine whether documents comply with the law. A fraudulent mortgage. I'm sorry? A fraudulent mortgage. A fraudulent mortgage can also be recorded as well. Fraudulent documents generally, a fraudulent deed of conveyance, attempting to convey somebody's house or make it look like somebody's house was conveyed or property was conveyed. And then, you know, that could also be corrected with a 5B affidavit. But in that context, too, fraudulent mortgage, fraudulent deed, fraudulent trust agreement, if I'm looking at that property thinking that I might want to purchase that, I'm going to see those documents and say, you know, what's going on with this? And that doesn't give them effect. In a bondage, just to be I don't even know if it would be relevant, the facts in a bondage. Was there a 5B affidavit in a bondage? Not to my knowledge. At least in the decision, it doesn't discuss an affidavit being recorded. Thank you. And if there's no further questions, Your Honor, I see my time has expired. So I'll rest in the breeze. Thank you. Thank you, Your Honor. Thank you, Counsel. That concludes argument in this case.